UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ADA RHODES, | ) | CASE NO. CV 04-07774 RZ |
|          Plaintiff, | ) ) | |
| vs. | ) ) | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART, Commissioner of Social Security Administration, | ) ) ) | |
|          Defendant. | ) ) ) | |

       This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and each party has filed a supporting memorandum. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

       The Administrative Law Judge concluded that, although Plaintiff suffered from such "severe" impairments as obesity, thyroid deficiency, high blood pressure, diabetes "and associated symptoms of back pain and leg swelling," she still was able to

perform limited kinds of sedentary, unskilled work. Plaintiff challenges this determination as follows:

### A.    Residual Function Capacity

Plaintiff first asserts that the Administrative Law Judge erred in assessing her residual function capacity (RFC). Plaintiff's treating physician, Jimmy Ezell, M.D., consistently noted that Plaintiff should do "no work" [AR 118-29], but the judge rejected that view in favor of two consulting physicians' assessments that she could perform some limited kinds of work.

Among the consultative physicians who examined Plaintiff were internist Soheila Benrazavi, M.D., in July 2002 and orthopedist Thomas E. Mroz, M.D., in February 2003. Although these doctors noted impairments such as hypothyroidism, back and leg pain, and morbid obesity, they still concluded that Plaintiff's physical and mental conditions permitted her to perform greater than sedentary levels of work. [AR 27-28, 222-28, 272-77] More specifically, Dr. Benrazavi believed Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; could walk 2-4 hours in an 8-hour workday; and could sit 6 of 8 hours – assessments supporting a "light work" finding. *See* SSR 83-10. Dr. Mroz thought Plaintiff could do even more. He noted her obesity and complaints of pain but concluded she still could lift and carry 50 pounds occasionally and 25 pounds frequently; could stand and walk 6 hours per 8-hour workday; could "sit without impairment"; and was limited only to "occasional bending and crouching" – assessments supporting a "medium work" finding. *Id.* [AR 276 (Benrazavi), 228 (Mroz)] Also, as the Administrative Law Judge noted, the non-examining state-agency evaluators largely "concurred with Dr. Mroz's assessment of the claimant's functional capacity [but] additionally limited [her] to occasional postural activity." [AR 28, *citing* AR 247-54] (The judge decided to accord Plaintiff the benefit of the doubt in part, in that he concluded that she was capable only of *sedentary*, not light or medium, work – which in turn led the

judge to conclude Plaintiff could not return to her prior industrial and mail-sorting jobs. [AR 30])

Dr. Ezell saw Plaintiff several times starting in December 2001, when she complained of back and elbow pain. Dr. Ezell initially noted her edema and positive straight-leg raising; diagnosed chronic back pain and morbid obesity; and prescribed her Motrin – nothing stronger – and restricted her, at her first visit, to "no work." [AR 129] Indeed, *all* of Dr. Ezell's examination notes conclude with his handwritten prescription, "no work." [AR 118-29] The Administrative Law Judge provided specific critiques of this conclusion and its foundation. In his initial summary of Dr. Ezell's treatment, the ALJ noted:

> While continuing the work restrictions, the claimant additionally complained of leg pain in December 2002 [about a year after her first visit to Dr. Ezell], but Dr. Ezell did not change the treatment plan. In a Certificate of Disability dated January 2003, Dr. Ezell opined that the claimant was disabled from January to May 31, 2003 secondary to lower back pain and bilateral leg swelling. When the claimant reported the same complaints on the next clinical visit, July 14, 2003, Dr. Ezell diagnosed the claimant with plantar fasci[i]tis of the right foot and morbid obesity, and referred the claimant to a foot specialist, but the progress notes did not specify a continuing work restriction. A renal ultrasound was normal, and echocardiogram and non-invasive lower extremity arterial and venous evaluations, all dated September 26, 2003, revealed only mild abnormalities.

[AR 27; *see also* AR 118, 266, 285, 291]

Later in his opinion, the Administrative Law Judge challenged Dr. Ezell's "no work" assessment directly, explaining,

> While Dr. Ezell continued to restrict the claimant from work, the claimant was examined by the consultative examiners who found virtually no abnormalities. It is incredible that Dr. Ezell restricted the claimant from work [on] the first day he examined her in a routine visit without the benefit of any diagnostic tests or reviewing the claimant's past medical history. Dr. Ezell's opinion is quite conclusory, providing little or no explanation of the evidence relied on in forming that opinion. The medical evidence merely states "no work."

[AR 29]

Finally, Plaintiff points out that she was prescribed a walker device, but the Administrative Law Judge addressed that issue in his opinion, noting that "there are no accompanying treatment notes detailing clinical or diagnostic findings to negate the unremarkable findings indicated in the visit immediately preceding the date the walker was prescribed," and therefore deciding that the walker prescription carried little weight. [AR 29]

The Administrative Law Judge may favor consultative examiners' views over those of treating physicians if he "makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (internal quotations omitted). Moreover, "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004). The judge's decision and

- 4 -

underlying record satisfy these legal tests in this case. (The portions of the judge's RFC decision relating to Plaintiff's obesity and credibility are addressed separately below.)

**B.     Obesity**

Plaintiff charges that the Administrative Law Judge "failed to discuss [Plaintiff's obesity's] relationship" to her other documented impairments. "He never considered that the obesity, in combination with [the other impairments], might have caused more severe restriction tha[n] would be expected from those impairments absent obesity." Pl.'s Mem. at 8. The Court disagrees.

In *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003), the Ninth Circuit remanded for a consideration of the plaintiff's obesity as it might impact her other impairments, even though the plaintiff had not explicitly raised obesity as an impairment. However, as the Court of Appeals subsequently noted in *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005), *Celaya* was premised on three factors, none of which was present in *Burch*: the plaintiff had raised the impairment implicitly, if not explicitly; the impairment was close to listing-level severity; and the plaintiff appeared without counsel. Thus, it appears that a central concern of *Celaya* was that the Administrative Law Judge might simply have overlooked the claimant's obesity.

This case differs from *Burch* as to some of these distinguishing factors but does not appear to be a setting in which obesity, as potential complicating factor, was overlooked. As to the first factor: Plaintiff expressly asserted her obesity as a problematic, complicating factor, if not as a freestanding cause of disability. At to the third factor: this case is similar to *Burch*, and distinguishable from *Celaya*, in that Plaintiff was represented at the administrative proceedings, and she is represented here by the same counsel. Surely counsel, experienced in Social Security law, could have raised the argument and developed it administratively had there been something to the point, such as by asserting – as Plaintiff still does not do, even in this Court – just which listed impairments she meets or equals, when her obesity is taken into consideration.

But meeting or equaling a listing is only one way in which a claimant can establish disability. More generally, the issue here is whether Plaintiff's obesity, in combination with other impairments, renders her disabled because that affliction further reduces her ability to do work. Plaintiff cites no evidence, even from her treating physician, that the various assessments of her ability to do work have not already taken her obesity into account. On the contrary, the Administrative Law Judge noted that several physicians, including Drs. Ezell, Benrazavi and Mroz, physically examined her and expressly diagnosed her "obesity" or even "morbid obesity," and the latter two physicians had her perform various clinical tests designed to measure her abilities and limitations. It therefore is reasonable to conclude that those doctors' opinions as to her ability to do work and her limitations *did* take her obesity into account – and that, if anything, her assessed ability to work would have been greater if she were not obese. The Administrative Law Judge had no evidentiary basis for concluding that the doctors believed that her obesity *further* complicated her ability to work, beyond what already is indicated in the doctors' assessments.

**C.     Credibility**

Plaintiff challenges the Administrative Law Judge's finding that her subjective-symptoms "testimony [was] generally not credible." If a claimant alleges "excess pain" and produces medical evidence of an impairment which reasonably could be expected to produce the pain alleged, then the Administrative Law Judge may reject the claims of pain only if he makes specific findings stating clear and convincing reasons for doing so. *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (*en banc*); *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996).

Here, the judge explained, Plaintiff's "testimony that she has to stop and rest 3-4 times to walk 10 feet is not corroborated by the medical evidence nor is consistent with her activities of daily living as she testified to." [AR 29] Those activities "include cooking, washing the dishes, making the bed, some dusting, doing the laundry twice a week, and


grocery shopping once a month. She sometimes drives to the market and to see her doctors." [AR 28] (Plaintiff asserts that she did not say she did those activities every day, hence not literally "daily," but this is unpersuasive; the judge took care to state expressly that some of the activities were done only "twice a week" or "once a month," not literally daily.) In addition, the judge found it telling that Plaintiff "failed to follow up on recommendations (orthopedic referrals) made by the doctor, which suggests that the symptoms may not have been as serious as has been alleged . . . ." [AR 29] Similarly, as to Plaintiff's depression-symptoms complaints, the Administrative Law Judge correctly (and adequately) pointed out that her "treatment records do not attest to any complaints of depression nor attest to any side effects from [her] medication."

The Administrative Law Judge here complied with the *Bunnell* standard in finding Plaintiff's testimony as to her level of pain and other subjective symptoms not credible. Specifically, he relied not only on the absence of corroborating medical evidence but also on Plaintiff's routine activities, some of which reasonably can be viewed as inconsistent with her claims of totally disabling impairments and pain. The fact that there may be other interpretations of a claimant's testimony that are reasonable does not mean that the Administrative Law Judge erred. As long as his interpretation is reasonable and supported by substantial evidence, it is not the role of the Court to second-guess it. *Rollins v. Massanari*, 261 F. 3d 853, 857 (9th Cir. 2001).

\*   \*   \*

For the foregoing reasons, the decision of the Commissioner is affirmed.

DATED:   March 15, 2006

*/s/ Ralph Zarefsky*
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE